# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE SECTION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | |
| | ] | |
| VS. | ] | CRIM. CASE NO. 3:06-cr-00168 |
| | ] | JUDGE TRAUGER |
| MARINO SCOTT | ] | |

## POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING FACTORS

### CASE HISTORY AND FACTS

On the morning of August 29, 2006, Charlie DeWayne Scott and Terrell Paris Marion entered the Regions Bank on West End Avenue, kicked open the door to the teller area and used a screwdriver to open the teller drawers. The two men, co-defendants in this case, wore ski masks and camouflage clothing, and took $18,437 in cash, along with several dye packs, and attempted to flee the bank but wrecked the car in the parking lot. The dye bombs exploded. They fled on foot from that car, scattering $15,316 in dye stained money as they ran, and got into a second car and drove away. Approximately 1 hour later, a Mercedes Benz automobile was stopped traveling west on Interstate 40 for a traffic violation. The officer who stopped the Mercedes said he could smell marijuana smoke and searched the car. During the search, the officer discovered marijuana, dye stained cash wrapped in a Regions Bank strap, ski masks and various items from the two stolen cars which were used as get away vehicles. The Defendant was arrested and subsequently indicted for bank robbery under 18 U.S.C. §§ 2113(a) and (2).

1

On February 20, 2007, Marino Scott entered a plea of guilty to bank robbery in violation of 18 USC §§ 2113(a) and (2), pursuant to a written plea agreement with the government.

The United States Probation Office has determined that the Adjusted Offense Level is 26. However, because the U.S. Probation Office has determined that the Defendant is a Career Offender within the meaning of U.S.S.G. § 4B1.1 and the statutory maximum for the instant is 20 years, the Offense Level is 32. With a 3 level adjustment for acceptance of responsibility, the Defendant will have a total offense level of 29.

The Defendant now stands before the Court for sentencing.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The following information was taken from the Presentence Investigative Report, interviews with the Defendant and with the Defendant's wife, Stacy Scott.

Marino Scott respectfully submits this memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

Mr. Scott had a very troubled and unstable childhood with little or no male authority figures to temper his behavior. He began drug abuse at age six with marijuana, and his first encounter with the juvenile justice system was at age 8. His mother was drug addict, and his father was simply not there for him. He was shuffled from household to household, between his mother, his grandmother and his aunt. He attended school up to the eleventh grade then dropped out, never having learned how to read. Though Mr. Scott's history as a juvenile is riddled with juvenile charges, much of the seeming criminal activity stemmed from lack of basic needs. He

turned to crime to provide the necessities of life.

At about age 29, Mr. Scott became determined to turn his life around. He worked hard for three years and obtained his G.E.D. degree in Colorado. Following that, he attended Southwestern Tennessee Community College in Memphis, Tennessee. However, he was unable to receive financial aid to complete his studies and was forced to drop out. Mr. Scott also attended Pikes Peak Community College in Colorado Springs, Colorado, for a period in 2002.

In 2000, Mr. Scott married Stacy Jones of Colorado Springs. They have one daughter, Syeria Scott, age 8, and Mr. Scott has six step-children. He also has a son, Theoppolis Smith, 17 years of age, from a prior relationship with Felicia Smith, and a son, Devante Williams, 11 years of age, from a relationship with Shonda Henderson. Because of Mr. Scott's current incarceration status, he is unable to pay child support for any of his children at this time.

## SENTENCING POSITION

The Defendant and counsel have reviewed the Pre-Sentence Report together and discussed and have communicated with the United States Probation Office regarding the report. There are some outstanding objections to the Pre-Sentence Report, which attributes to the Defendant an Adjusted Base Offense Level of 26[1], a Criminal History Category of VI, and a guideline sentencing range between 151 and 188 months.

The United States Probation office added three levels as a Specific Offense Characteristic in Paragraph 23 because a dangerous weapon was possessed, citing U.S.S.G. §2B3.1(b)(2)(E).

The Defendant objects to a 3 level enhancement because a dangerous weapon was

---

[1] Prior to Chapter Four Enhancements.

3

possessed pursuant to U.S.S.G. §2B3.1(b)(2)(E).[2] U.S. Sentencing Guidelines Manual §§ 2B3.1, *Application Note* 2 (2006) indicates that an object shall be considered a dangerous weapon if the object closely resembles an instrument capable of inflicting death or serious bodily injury, or the defendant created the impression that the object was capable of inflicting death or serious bodily injury, such as where a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun. In the instant case, Mr. Charles Scott was in possession of the screwdriver and according to all accounts, made no threatening gestures or comments to the tellers.

The Sixth Circuit applies an objective standard in determining whether an object may be considered a dangerous weapon for the purpose of U.S.S.G. § 2B3.1(b)(2)(E). *U.S. v. Rodriguez* 301 F.3d 666, 668 (C.A.6 (Tenn.,2002), *citing Woodard,* 24 F.3d at 874 (employing an objective standard in upholding a §§ 2B3.1(b)(2)(E) enhancement where the defendant used a realistic-looking toy gun during a robbery). The ultimate inquiry is whether a reasonable individual would believe that the object is a dangerous weapon under the circumstances. *United States v. Hart,* 226 F.3d 602, 607 (7th Cir.2000) ("We believe that the relevant question is whether a reasonable person, under the circumstances of the robbery, would have regarded the object that the defendant brandished, displayed or possessed as a dangerous weapon, capable of inflicting death or serious bodily injury.")

No reasonable individual would have believed that the object was a dangerous weapon under the circumstances because Charles Scott said nothing, made no threatening gestures, and only used the screwdriver to open the teller drawers. The teller commented that she was only in

---

[2] The Defendant would concede that, should the Court determine that the three-level enhancement does not apply, there would be no impact on the applicable guideline range inasmuch as the Defendant is a Career Offender.

4

fear in the event she or someone else might have intervened, which neither she nor anyone else did. Her fears were merely posed as a subjective "what if" situation, which did not occur.

Mr. Scott respectfully requests that the Court consider several important circumstances of this case in fashioning a sentence: the Defendant has the strong support of both his family and the community as evidenced by the letter written to this Court and signed by many members of the Relevant Word Ministries and from the community of Colorado Springs, Colorado. [Doc. No. 65] The Defendant has been both a good husband and good father to his children and step-children. He is supported by his wife and family who desperately need his support, both as a loving father and a financial care-giver. [Doc. No. 69] His mother, Ms. Joyce Scott, suffers from diabetes and has recently been diagnosed with cancer of the liver. The Defendant has been designated as a possible liver donor for his mother, though all the blood tests to confirm a donor match have yet to be performed due to his incarceration. [Doc. No. 63-1, et seq. Sealed] "Among the permissible justifications for downward departure...is the need, given appropriate circumstances, to reduce the destructive effects that incarceration of defendant may have on innocent third parties." *U.S. v. Milikowsky*, 65 F.3d 4, 8 (2nd Cir. 1995). While it is true that the Defendant has an extensive criminal history, much of that history constitutes crimes committed to obtain money to supply the basic necessities of life. [Doc. No. 71] The Defendant's role in this offense consisted of assisting the co-defendant's in purchasing camouflage clothing and masks in Jackson, Tennessee, and facilitating the theft of the automobiles used by the co-defendants in escaping from the scene of the robbery. Mr. Scott was not present at the scene of the robbery and was a participant only to the extent outlined above. The Defendant cooperated with authorities

5

and supplied substantial assistance in the prosecution of others. Though it is in the sole discretion of the government pursuant to the plea agreement, it is anticipated that the government will move the Court for a downward departure pursuant to U.S.S.G. § 5K1.1. The Defendant's position is that it is appropriate that the government do so, and equally appropriate and justified that the Court grant the government's motion.

The Court is no doubt aware of the broad ramifications of *United States v. Booker* for this proceeding. The sentencing guideline range is no longer binding on the Court, but is only one of several factors to be considered in determining the sentence. *U.S. v. Booker*, 125 S.Ct. 738, 764-65, 543 U.S. 220, 160 L.Ed.2d 621 (2005). The other factors include, but are not limited to (1) the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to (a) reflect the seriousness of the offense, promote respect for the law and to provide punishment ;(b) to afford deterrence; (c) to protect the public from further crimes of the defendant and (d) to provide the defendant with needed education or vocational training, medical care or other correctional treatment; (3) the kinds of sentence available; (4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) the need to avoid unwarranted sentencing disparity; and (6) the need to provide restitution. *Id.*; 18 U.S.C. § 3553(a).

In considering the Section 3553(a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. *See United States v. Jaber*, 362 F. Supp. 2d 365, 370-76 (D. Mass. 2005) (providing comprehensive analysis of why sentencing guidelines do not reflect statutory purposes of punishment); *United States v. Ranum*, 353 F. Supp. 2d 984, 987 (E.D. Wis. 2005) (same). What is the proper consideration for sentencing purposes now is the

6

"reasonableness of the sentence", considering the 3553 factors. *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005).

> Now when a district court imposes and we review a sentence for reasonableness, the focal point is on 18 U.S.C. § 3553(a). In section 32553(a), there are numerous factors for a court to consider and under *Booker*'s remedial holding, the sentencing guideline range is one of those factors. That is, while the guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant.

*United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006).

Perhaps even more important, however, is that *Booker* establishes a new, independent limit on the sentence that may be imposed. The primary sentencing mandate of Section 3553(a) states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment—justice, deterrence, incapacitation, and rehabilitation:

The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]. 18 U.S.C. § 3553(a) (emphasis added). This so-called "parsimony provision" is not simply a factor to be considered in determining sentence; it represents a cap above which the Court is *statutorily prohibited* from sentencing—even when a greater sentence is recommended by the sentencing guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).

In this instance, when considering the background, history and characteristics of the Defendant, his cooperation with the government, and all the other factors enumerated in 3553(a), a sufficient and reasonable sentence would be no more than 75 months, should the Court ultimately decide that the guidelines should form the basis of the sentence. The Defendant, as indicated above, believes that there are sufficient grounds and justification in this case for the

7

Court to depart downward from the guideline sentence should the government move the Court to do so.

## CONCLUSION

In summation, the Court should fashion a sentence that is reasonably sufficient, but not greater than necessary, to satisfy the ends of justice. Should the government file a motion for downward departure pursuant to U.S.S.G. § 5K1.1, the Court should grant that motion and depart downward from the guideline sentence range to a sentence of no more than 75 months.

Respectfully Submitted,


s/Dwight E. Scott
BOPR No. 016892
4024 Colorado Ave.
Nashville, TN 37209
615-292-6865
FAX 615-292-6865


CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Motion has been provided to Asst. U.S. Attorney Hal McDonough, hal.mcdonough@usdoj.gov, via the court's electronic filing system on this the 1st day of May, 2007. Other parties to the case will be served via means.

s/ Dwight E. Scott

8